UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

MICHAEL REYNOLDS,

           Plaintiff,

Case No. 4:05-CV-60

v.

Hon. Richard Alan Enslen

VILLAGE OF MATTAWAN,
GARY JACOBS, in his official and
individual capacities, and BRANDON
WEBER, in his official and individual
capacities,

           Defendants.

**OPINION**

_____/

Plaintiff Michael Reynolds has brought this suit pursuant to 42 U.S.C. § 1983 and state law seeking compensation for injuries sustained due to alleged acts of excessive force, and assault and battery by police officers (Defendants Gary Jacobs and Brandon Weber) employed by the Village of Mattawan, Michigan on June 15, 2003. Plaintiff has also sued Defendant Village of Mattawan. Defendants have moved for summary judgment as to all claims. Oral argument of the motion is unnecessary given the briefing submitted by the parties. *See* W.D. Mich. L. Civ. R. 7.2(d).

**FACTUAL BACKGROUND**

This suit was filed on June 8, 2005. Plaintiff seeks compensation for facial and nose fractures, severe bruising, and other both permanent and temporary injuries arising from his arrest of June 15, 2003. (Compl. ¶ 26.) The Court has reviewed the entire record of said arrest, including the police report, the police department audio and video of the arrest, and the divergent deposition testimonies and affidavits of the parties. As required by Federal Rule of Civil Procedure 56, the

Court must interpret the factual record in a light most favorable to the non-moving party, Plaintiff Reynolds.

So interpreted, the evidence supports Plaintiff's contention that the force used by the arresting officers was unnecessary and excessive, and was inflicted for malicious purposes and not for the purposes of maintaining public order and officer security.  Plaintiff's own account is summarized in his briefing as follows:

> . . . the officers became angry at Mr. Reynolds [because of] his "smart ass" attitude and lack of cooperation.  Mr. Reynolds . . . was not being physically aggressive: . . . He is 5'6", 135 lbs., . . . the officers . . . were each approximately 6'0", 200 lbs.[1]
>
> Officer Weber then, in response to Mr. Reynolds' request that they read him his rights, told Mr. Reynolds, "I ain't going to tell you shit, fuck, turn around and put your hands behind your back, you're under arrest for drunk driving."  He then spun Mr. Reynolds around and bent him over the driver's side [hood] of Mr. Reynolds' car.  Immediately thereafter Sergeant Jacobs grabbed Mr. Reynolds' left arm, and Officer Weber grabbed the upper right side of Mr. Reynolds' body. [The officers then] pushed in the same direction, which threw [him] off balance. . . . They then lifted up Mr. Reynolds and dropped him over the driver's side hood of his car. . . .[2]
>
> . . . Sergeant Jacobs . . . grabbed Mr. Reynolds [who was also held by Officer Weber] by the back of his head or the base of his ponytail . . . [and] slammed Mr. Reynolds' face quickly and violently into the hood of the car at least twice. . . . Sergeant Jacobs then [again] violently slammed Mr. Reynolds' face directly onto the hood of the car . . ., putting a large dent into the hood . . . .  During this entire time, Mr. Reynolds was not resisting.[3]

---

[1]Reynolds Dep. 58-64; Jacobs Dep. 87-89; Weber Dep. 4-5.

[2]Reynolds Dep. 60-68; Weber Dep. 65-66; Reynolds Aff. ¶ 1.

[3]Reynolds Dep. 68-82.  While Defendants' position is that the officers were simply trying to keep Plaintiff against the vehicle to apply handcuffs and counter resistence, Br. in Supp. at 2, the videotape and other evidence may be construed to support an inference that the officers initiated a confrontation with a suspect who was not physically hostile and then applied extreme force (repeatedly smashing his head into the hood) while he was non-resistant.

Officer Weber then conducted a pat down search of Mr. Reynolds. During this, he grabbed Mr. Reynolds' groin. [Plaintiff was then placed into the squad car and] was bleeding from above and around his left eye, his nose and his mouth. . . . . He also had a cut on his arm.[4]

. . . The officers then took Mr. Reynolds to Lakeview Community Hospital for [blood alcohol and substance abuse testing] . . . . The officers [returned with] Mr. Reynolds . . .to [the] jail, but [in the process] . . . Sergeant Jacobs again slammed Mr. Reynolds' head onto [the back fender of the police] car. . . .[5]

Later on the day of the incident Mr. Reynolds went back to Lakeview Community Hospital, where personnel gave him pain medication and x-rayed his orbital bones. . . .[6]

(Br. in Opp. 2-4.)

Plaintiff's account of these incidents is, as noted above, supported by his deposition testimony and affidavit. It is also generally supported by the videotape of the arrest, which shows the officers forcing Plaintiff's head (while his hands were being restrained) onto the hood of the police car on repeated occasions at 2:32 a.m. [Br. in Supp., Ex. A.] At 2:33 a.m., when he is led back to the patrol car under arrest, his facial injuries are apparent. The videotape filed with the Court only covers the initial arrest (from 2:28 a.m. to 3:00 a.m.) and does not portray the later incidents with the police car when Plaintiff was returned to the jail from Lakeview Hospital. The videotape is also generally consistent with Plaintiff's contention that he did not physically resist or assault officers during the recorded incidents.[7]

---

[4]Reynolds Dep. 75-77; videotape at 2:33 a.m.; Reynolds Aff. ¶ 2.; Br. in Opp., Exs. 2-7.

[5]Reynolds Dep. 91.

[6]Plaintiff received later medical treatment for orbital fractures, nose fractures, bleeding, bruising and swelling. (Br. in Opp., attach. 8.) Plaintiff has also submitted photographs of his injuries, which show significant injuries even though the photographs were taken two weeks after the incidents. (*Id.* Exs. 2-7; Reynolds Aff. ¶ 2.)

[7]While the officers' testimony is to the contrary, the Court must credit the non-movant's testimony for the purpose of Rule 56 review.

The record does not support any inference that the use of excessive force by the officers was caused by any policy or defective training of the Village of Mattawan.  For this reason, Plaintiff has conceded that claims against the Village of Mattawan should be dismissed.  (Br. in Opp. 15.)

### SUMMARY JUDGMENT STANDARDS

Defendants' Motion is brought pursuant to Federal Rule of Civil Procedure 56.  Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions.  *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor.  *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255).  The factual record presented must be interpreted in a light most favorable to the non-movant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

## LEGAL ANALYSIS

### 1.  Section 1983 Liability of Defendants Jacobs and Weber

Even a person lawfully arrested has a right under the Fourth Amendment that the arresting officials not use "excessive force" in the making of his or her arrest or detention.  *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  In considering "excessive force" claims to determine whether the force used was excessive, the United States Supreme Court has instructed all federal courts to examine objectively the totality of the circumstances and especially such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  These factors are be reviewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*.

Drawing the various inferences in Plaintiff's favor, the suspected crime at issue was a first offense impaired driving misdemeanor (which is a 93 day misdemeanor under Michigan law, Mich. Comp. Laws § 257.625).  (*See* Br. in Supp., Ex. 1 at 3.)[8]  While this is a serious offense which requires the driver to be taken into custody, it is not the kind of offense which would customarily require use of blows to the head of a suspect absent resistence of arrest.  In this case, Plaintiff was unarmed and, once stopped and arrested, did not pose any threat to the officers or the public. Plaintiff was also not resisting arrest (construing the disputed facts in his favor).

Applying the *Graham* criteria to this application of the use of force, the situation presented to police officers required a deliberate and controlled use of force to arrest the subject.  It decidedly

---

[8]While the police report also mentions a possible resisting arrest charge, the record is construed in favor of the non-movant and as inconsistent with resisting arrest.

did not require the repeated and violent slamming of the suspect's head onto his vehicle in a manner to cause him serious and possibly permanent facial and neck injuries.  Therefore, the Court determines that Defendants Jacobs and Weber, given the genuine issues of material fact as to the use of force, are not entitled to summary judgment since a jury could reasonably find that they had together used excessive force against Plaintiff.[9]

Defendants Jacobs and Weber have also argued that they cannot be liable given the protections afforded by qualified immunity.  Qualified immunity protects officers from section 1983 liability when the federal rights which were violated were not "clearly established" at the time of violation.  *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Of course, the use of excessive force in affecting the arrests of suspects has long been deemed a violation of the Fourth Amendment.  The general parameters of Fourth Amendment excessive force law were explained by the Supreme Court's *Graham* decision in 1989 and have been consistently applied since that time.  The Supreme Court in *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) in a nearly unanimous decision[10] distinguished two types of excessive force case in terms of the application of qualified immunity.  The first type of case is one in which the application of the general rules from *Graham* (nonlethal force) and *Tennessee v. Garner*, 471 U.S. 1 (1985) (lethal force) "clearly establish" an "obvious" violation even without reference to a factually similar case adjudicating a Fourth Amendment

---

[9]While this finding addresses both officers since they jointly applied the force in question, even were it not so, section 1983 liability for Defendant Weber could also be premised on his failure to stop Defendant Jacobs' repeated use of excessive force.  *See Bruner v. Dunaway*, 684 F.2d 422, 425-26 (6th Cir. 1982); *McHenry v. Chadwick,* 896 F.2d 184 (6th Cir. 1990); *Durham v. Nu'man*, 97 F.3d 862, 867 (6th Cir. 1996); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972).

[10]Justice Stevens was the sole dissenter and applied a different vision of the qualified immunity protection–that it be applied by juries and not by the presiding court in cases involving fact specific inquiries.  *See Brosseau*, 543 U.S. at 206.

violation.[11]   The instant case, if Plaintiff's testimony is credited, presents multiple examples of "obvious" Fourth Amendment violations.  The easiest example is the alleged untaped forcing of Plaintiff's head against the police vehicle after he was in handcuffs.  This kind of force contradicts each of the *Graham* factors and cannot be reasonably defended on any policy ground.  As such, it is properly deemed an "obvious" Fourth Amendment violation.  So too, forcing Plaintiff's head repeatedly against his own vehicle while his one hand was held secured by Defendant Weber, his second arm was pinned against his vehicle and he was not resisting arrest, is the kind of random official violence which cannot be defended on the *Graham* factors and which so construed is an "obvious" violation of the Fourth Amendment.[12]

For cases which are not obvious, such as the car chase/use of deadly force case adjudicated in *Brosseau*, the Supreme Court requires the existence of factually specific precedent to inform officers before the constitutional right is deemed "clearly established." Because of divergent precedent in the car chase arena, though, the Supreme Court decided that the constitutional right was not "clearly established" and "fell in the 'hazy border between excessive and acceptable force.'" *Id.* at 201 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  Assuming for the purpose of argument that the instant alleged constitutional violations were not "obvious," then prior precedent,

---

[11]For this proposition, the Supreme Court cited its decision in *Hope v. Pelzer*, 536 U.S. 730, 738 (2002), which had earlier established this proposition as to Eighth Amendment excessive force/punishment cases.

[12]To the extent that the Sixth Circuit three-factor test (*see Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*)) for the application of qualified immunity has not been displaced by the *Brosseau* analysis and/or the Supreme Court's analysis in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *see Dunigan v. Noble*, 390 F.3d 486, 491 n.6 (6th Cir. 2004) (noting disagreement among Sixth Circuit panels), the Court finds that each of the factors have been proven by Plaintiff.  (*See also* Br. in Opp. 9-10.)

nevertheless, clearly establish the conduct to constitute excessive force in violation of the Fourth Amendment.

As to the alleged use of gratuitous force following Plaintiff's handcuffing (during the transport between Lakeview Hospital and the jail), prior precedent, including the Sixth Circuit decisions in *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002), *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988), the Eleventh Circuit decisions in *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) and the Fourth Circuit decision in *Jones v. Buchanan*, 325 F.3d 520, 529-30 (4th Cir. Apr. 15, 2003), clearly establish the violation. Indeed, this is essentially conceded at page 10 of Defendants' Motion (". . . there was certainly case law that existed on June 15, 2003 that put police officers on notice that it was unconstitutional to use gratuitous force against a[n] [unarmed] suspect who had been handcuffed and subdued, *Phelps v. Coy* . . . .")

Further, there is no shortage of prior precedent indicating that the gratuitous use of violence against an unarmed misdemeanor suspect is a Fourth Amendment violation. First of all, when a suspect's hands are otherwise restrained (as some testimony suggests here), the above cited cases are sufficient to provide the rule of decision even though the means of restraint are different from handcuffs. Second, the *McDowell* case stands, in part, for the proposition that the gratuitous use of force against an unarmed suspect constitutes a violation of the Fourth Amendment. *McDowell*, 863 F.2d at 1307. *McDowell* long ago cited in favor of this proposition the case of *Dugan v. Brooks*, 818 F.2d 513, 516-17 (6th Cir. 1987)–a case which involved the gratuitous use of a nightstick to strike from behind an unarmed and unrestrained suspect. *Dugan* found the facts alleged to constitute a Fourth Amendment violation. It makes little sense to argue that substituting a car hood for a nightstick should result in a different rule. *See also Lester v. City of Dugan*, 830 F.2d 706, 714 (7th

Cir. 1987) (holding that jury should consider whether kneeing a non-resistant subject in the back during arrest may constitute a Fourth Amendment violation); *Shillingford v. Holmes*, 634 F.2d 263, 266 (5th Cir. 1981) (holding that bludgeoning an unarmed bystander during a disturbance without cause constituted a Fourth Amendment violation).

Even more significant is the Sixth Circuit's decision in *Darnell v. Caver*, 1998 WL 416000, *3 (6th Cir. July 7, 1998), which though an unpublished opinion, was expressly approved by the Sixth Circuit in its 2002 published decision of *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002). In *Darnell*, as in the present case, a driver was rightly arrested for drunken driving. *Id.* at *1. Nevertheless, the Sixth Circuit held that Darnell was entitled to a jury trial as to the supporting testimony that the police officer–while Darnell was unarmed, unrestrained, drunken and not completely cooperative–injured him by throwing and/or slamming his head to the asphalt. This case is functionally identical to the *Darnell* scenario and, if anything, makes a stronger showing of a Fourth Amendment violation due to the repeated nature of the excessive force.

Another similar case by the Sixth Circuit is its unpublished decision in *Michella v. Bauman*, 72 Fed. Appx. 405 (6th Cir. Aug. 13, 2003). In that case, the Sixth Circuit reversed a grant of summary judgment on both qualified immunity and Fourth Amendment grounds. The Sixth Circuit found that there were sufficient evidence of a clearly established Fourth Amendment violation relating to a misdemeanor arrest in June 1999 wherein the arrestee was allegedly slammed into the police car to subdue her. *Id.* at 408-09. Interestingly, the *Michella* case likewise involved videotape footage which was subject to diverse interpretations of the parties on the issue of whether the plaintiff was resisting arrest at the time force was used.

For all of these reasons, the Court finds that Defendants Jacobs and Weber are not entitled to qualified immunity.

### 2.   State Law Assault and Battery Claims

Michigan law follows the common law rule that a police officer is entitled to use reasonable force to detain a suspect, but the use of excessive force against a citizen will constitute an assault and battery, provided that the elements of the torts are otherwise proven.  *See White v. City of Vassar*, 403 N.W.2d 124, 130 (Mich. Ct. App. 1987); Mich. Civ. J.I. 115.91.  Because there are genuine issues of material fact as to whether the force used was excessive, Defendants Jacobs and Weber are not entitled to summary judgment on the state law claims.

### 3. Section 1983 Claims against Defendant Village of Mattawan

Defendant Village of Mattawan has requested summary judgment as to the section 1983 claims against it under the rules in *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) and *City of Canton v. Harris*, 489 U.S. 378 (1989).   Plaintiff agrees with this contention. Therefore, summary judgment shall enter dismissing those claims (Count II of the Complaint) against Defendant Village of Mattawan.

## <u>CONCLUSION</u>

In accordance with this Opinion, a Partial Judgment shall enter dismissing claims against Defendant Village of Mattawan, but otherwise denying Defendants Jacobs and Weber's Motion for Summary Judgment.

|  |  |
|---|---|
|  | /s/ Richard Alan Enslen |
| DATED in Kalamazoo, MI: | RICHARD ALAN ENSLEN |
| May 15, 2006 | SENIOR UNITED STATES DISTRICT JUDGE |

10